ARMAND LACHAISE and VICTOR FAUCHE *v.* ABIEL B. MARKS, impleaded with GEORGE P. LORD and SAMUEL N. BROWN.

The certificate of the formation of a limited partnership declared, " that all the general partners interested therein are A. and B., both of Brooklyn, in the state of New York; and that the special partner interested therein is C., of Jersey City, in the state of New Jersey." *Held,* that this was a compliance with the statute requiring the certificate to contain the respective places of residence of the general and special partners, and that no more distinct aver-ment of residence was required. (2 R. S. 4th ed. p. 174, § 4, subd. 3.)

An alteration in the names of the partners and in the capital or shares of the business, in contravention of the twelfth section of the act authorizing limited partnerships, operates simply as a dissolution.

It is only by carrying on the business, after such alteration, that the firm is changed into a general partnership, and the special partner rendered equally liable for the debts.

Accordingly, where the partners entered into an agreement of dissolution, the special partner selling his interest to the general partners, the latter intend ing to continue as a general partnership; *held,* that assuming that such agreement was an " alteration" within the meaning of the twelfth section, the liability of the special partner was not enlarged thereby, it appearing that the dissolution, as so agreed upon, afterwards took effect legally accord-ing to the terms of the twenty-fourth section, after four weeks' notice, and no business being proved to have been transacted intermediate the agree-ment and the expiration of such four weeks' notice.

Where the " alteration," contemplated in § 12, is made, the firm, as thereafter carried on, is a general partnership, but the same is not to be deemed retro-actively to have been a general partnership from the beginning.

Such an agreement of dissolution, without the withdrawal of capital, accom-panied by notices, signed by all the partners, and declaring that the dissolu-tion is to take effect according to law, is only a legal dissolution under § 24, to take effect at the expiration of the period of notice, and is not an " altera-tion" under § 12.

Lachaise *v.* Marks.

The mere giving of notes, payable at a future time, by the general partners to the special partner, in the same name as that of the partnership, upon the making of such agreement, with a view of purchasing his interest, is not a withdrawal of capital, under § 15.

The receipt, by the special partner, of dividends, as a device to withdraw capital, will render him liable as a general partner; but dividends may be paid to him in good faith with only the effect to require him to restore, in case the capital shall thereby be unintentionally reduced.

The statute concerning limited partnerships should be construed strictly, but not harshly, nor in a spirit hostile to those who seek its benefits.

An order granting an injunction and appointing a receiver, in an action against an insolvent limited partnership, seeking to charge the special partner as a general partner should not be made, where the complaint is filed by a single firm in behalf of itself alone, and not also in behalf of such other of numerous creditors as may desire to come in and contribute to the expenses of the suit, and where, also, the special partner answers and denies the indebtedness alleged by the plaintiffs. *Per* INGRAHAM, FIRST J., *note a*, p. 612.

The pendency of a similar action, commenced by other creditors of the partnership, and wherein an injunction and a receiver are sought, forms no ground for refusing the order. *Per* INGRAHAM, FIRST J., as above.

THIS action was instituted to recover from the three defendants, as general partners, the amount of a promissory note for $1,073 50, made by the firm of "Lord & Brown." It was admitted, that in December, 1850, the defendants perfected all the statutory proceedings required to form a limited partnership, for the term of five years, except that the certificate recorded with the county clerk was alleged by the plaintiffs to have been irregular in the particular specified in the opinion of WOODRUFF, J.

The note in suit was given in the course of the business of the firm.

To July, 1854, the special partner, Marks, had received from the firm $18,339 80, which the plaintiffs charged was a return of capital, but which the defendants averred was on account of profits and interest believed to be due to him, and allowed in good faith.

On the 14th of August, 1854, the three partners entered into an agreement of dissolution, and signed notices thereof for publication, which were filed, recorded and published pursuant to the statute. The agreement provided, that in con-

Lachaise v. Marks.

sideration of certain notes then given by the general partners to Marks, the latter should assign and sell his interest in the firm to them, they to pay all debts and to indemnify him from liability. The general partners then advertised that they would continue the business of the late firm. The notes referred to were signed "Lord & Brown," which had been the name of the limited partnership, and were for various sums, amounting together to $17,000, payable in different periods, varying from twelve to thirty-six months. A notice of dissolution was duly filed and published.

The cause proceeded to trial upon the answer of the defendant, Marks, alone, and resulted in a nonsuit, with liberty to review the ruling in the first instance at a general term. (a.)

(a.) The complaint, as amended and as it stood when the trial was moved on, indicated simply an action at law upon the note, alleging, however, proceedings by the defendants to constitute a special partnership, and then averring grounds for charging that the defendant, Marks, was not entitled to the immunities of a special partner. Before amendment, and in the earlier stages of the suit, the complaint would seem to have contained additional allegations with a view to some equitable relief. In January, 1855, a motion appears to have been made in behalf of these plaintiffs, for an injunction against the defendants, and for the appointment of a receiver of their assets during the litigation. Upon the decision of that application, at a special term, the following opinion was delivered:

INGRAHAM, FIRST J.—The plaintiffs, being creditors of Lord & Brown, move for an injunction against the partnership property, and a receiver. The complaint shows the indebtedness of the firm of Lord & Brown to the plaintiffs, upon a note of $1,073 50; that Lord & Brown formed a limited partnership in December, 1850, to continue five years, and that the other defendant, Marks, was the special partner, having advanced $20,000 thereto; that during the existence of the partnership, Marks withdrew from the funds of the firm $18,339 80, and about the 1st of July, 1854, received from the firm their notes for $17,100; that at about that time, the firm served upon their creditors a notice of the dissolution of the limited partnership; that at the time Marks received such sums of money from the firm, they were insolvent, and that such moneys were transferred in contemplation of insolvency; that the firm of Lord & Brown is now insolvent, and wholly unable to pay their debts, and have now in possession several thousand dollars of assets of said partnership, out of which they are paying debts, and giving preferences over the debt due to the plaintiffs.

The defendants, Lord & Brown, do not deny the indebtedness to the plaintiffs. They admit the insolvency of the firm, and that they have in their pos-

Lachaise v. Marks.

*C. Bainbridge Smith*, for the plaintiffs, cited 2 R. S. 4th ed. p. 173 ; *Staples* v. *Fairchild*, 3 Coms. 41 ; *Ex parte Al-*

session some of the assets of the firm. They explain the moneys paid to Marks to have been dividends of profits, which they allege to have been made in good faith, and after allowance for all losses sustained at the times of such dividends, for the years 1851, 1852 and 1853; and aver that such dividends were made from the net profits. They also aver, that at the time of the dissolution, in July, 1854, they believed the firm to have been solvent. That on such dissolution they bought from the defendant, Marks, his interest in the assets of the firm as special partner, for which the notes of Lord & Brown were given, payable after all the liabilities of the special partnership should have been matured. That Lord & Brown, as general partners, bought the assets of the firm of Lord & Brown, (the limited partnership,) which were duly transferred to them, and they incurred a liability for said purchase of $140,000, of which they have since paid $75,000. That Lord & Brown thereupon formed a new general copartnership, in which Marks had no interest. That such new firm failed in November, 1854, and that there is now due to the creditors of the limited partnership, $65,000, and of the general partnership, $115,000. They also allege the pendency of another action in this court, by Lottimer and others, in behalf of all the creditors of such limited partnership, praying for an injunction and receiver, prior to the commencement of this action

If this action had been by the plaintiffs as creditors of Lord & Brown, on behalf of all the creditors of the limited partnership, and Marks had not been sought to be charged as a general partner, I think the facts appearing before me would have been sufficient to warrant the granting of this motion. The firm is admitted now to be insolvent, owing about $65,000, and by a proceeding to which but little value can be attached, so far as the claims of creditors are concerned, all the assets of the firm of Lord & Brown, the limited partnership, have been sold to Lord & Brown, the general partners, and, as appears from the evidence, in consideration of their agreeing to pay all the liabilities of the limited partnership, amounting to $140,000. Had such liabilities been discharged at maturity, none of the creditors would have had any cause of complaint against the arrangement; but when debts to the amount of $65,000 are left unpaid, the creditors may well claim as void a sale of the whole assets of the firm by the partners to themselves, when they are told they have no claim upon such assets, and must rely upon the individual liability of Lord & Brown, the members of the general partnership, to whom they claim such assets belong. No such arrangement can be sustained to deprive the creditors of the limited partnership of their right to insist that the assets of that firm shall be applied to the payment of its debts; and although the defendant may have gone on and paid, with borrowed money, some of their liabilities, there is nothing in that fact to justify them in withholding from such creditors the assets still remaining in their hands, and which, under any circumstances, should be applied

*drich,* 1 Denio, 662 ; *Smith* v. *Argall,* 3 id. 435 ; *Cunningham*
v. *Goelet,* 4 id. 71 ; *Ex parte the Bank of Monroe,* 7 Hill,

in discharge of the liabilities of the limited partnership. That such a transfer
between the same parties cannot be sanctioned as depriving creditors of their
right to follow the assets of the firm for the discharge of its debts, seems to me
inconsistent with every principle of justice or equity. It may be, that upon a
dissolution of a firm, one partner may sell to the other partner all his interest
in the assets of the firm, and that if such transaction is *bona fide,* and for the
purpose of winding up the affairs of the firm, a creditor cannot take such pro-
perty from liens obtained against it by the creditors of the partner making
the purchase. (*Ketchum* v. *Durkee,* 1 Barb. Ch. R. 480.) But this doctrine
cannot be extended to such a case as the present one, and I doubt whether it
can be in any case of limited partnership.

The right to grant such motion was settled in the case of *Innes* v. *Lansing,* 7
Paige, 584, and has been since followed by the Supreme Court in *Whitewright*
v. *Stimpson,* 2 Barb. S. C. R. 379; and the rule adopted in those cases, as to
limited partnerships, was extended by Judge EDMONDS to a general partnership
in *Dillon* v. *Horn,* 5 How. Pr. R. 35. Whether the decision in the latter case
can be sustained, it is not necessary now to decide. And when it appears that
a disposition was made, or to be made, of the assets, in giving a preference to
one creditor over another, in view of insolvency, the provisions of the 219th
section of the Code are comprehensive enough to warrant such a proceeding.

In the cases, however, to which I have referred, the action was commenced,
not for the benefit of the plaintiffs solely, but of all the creditors of the insolvent
firm. The appointment of a receiver in those cases would have secured the
partnership funds and assets for the joint benefit of all; and upon a distribution
of such assets, the creditors would have been entitled equally to share in the
proceeds thereof. There is a manifest propriety in requiring such a form of
action before the property of the firm should thus be placed in the hands of
the receiver. There is no equity in taking from a firm the whole of their pro-
perty to pay or secure one individual creditor to the exclusion of others. The
impropriety of thus placing in the hands of a receiver the whole of the assets of
the firm to pay a claim of $1,000, and thereby depriving other creditors having
claims amounting to $64,000 of any proceedings against such assets until the
first creditor is paid, is so manifest that it can require no argument to show
that it ought not to be done. Even if the plaintiffs were judgment creditors,
they could only have an order allowing a receiver to take sufficient of the assets
of the firm to obtain the means of discharging their debt; and until they are
judgment creditors, there is no propriety in giving them a receiver, unless in a
case where the effect of such receivership will operate to secure all the creditors
of the firm.

I think, also, there is a difficulty in the present action which forms an objec-
tion to the granting of this motion. It should be required, to warrant such an

177 ; *Beers* v. *Reynolds,* 12 Barb. S. C. R. 288 ; *S. C.* 1 Kern. 97 ; *Mad. Co. Bank* v. *Gould,* 5 Hill, 309 ; *Andrews* v. *Schott,* 10 Barr, Pa., 47 ; Coll. on Part. 3d Am. ed. p. 96, § 100, note 1, § 121, note 1, § 546 ; Story on Part. §§ 307, 308, 324, 328 ; *Innes* v. *Lansing,* 7 Paige, 583 ; *Haggerty* v. *Taylor,* 10 id. 261 ; 3 Kent's Com. 5th ed. § 64 ; Troubat on Lim. Part. p. 400, § 401, and other cases.

---

order, that all the defendants sought to be made liable as partners admit the indebtedness. The defendant, Marks, (to whose answer I have not before referred,) denied such indebtedness. He denies any joint indebtedness whatever, and does not admit the plaintiffs' claims. If he is sought to be held liable as a defendant, he certainly does not admit the indebtedness; but, on the contrary, his answer shows a statement of facts which would, if proved, entitle him to a verdict. Besides, other creditors might not, even if the action had been commenced for all the creditors, have been willing to engage in such a contest.

It is not necessary for me to pass upon the questions argued before me as to the liability of Marks. His liability is denied. If it exists it is not admitted, so as to warrant me in granting this motion. If he is not liable, it can only be decided at the end of a protracted litigation ; and the funds and assets of an insolvent firm should not be tied up from all the creditors for the purpose of enabling one creditor to enter into such a controversy. The granting of an injunction and appointing of a receiver in cases of this kind is admitted by the chancellor to be in addition to the former powers of a court of equity; and it seems to me to be proper that the. power should only be exercised where the claim is undisputed, and where the property will, as speedily as possible, be applied to the use of the creditors.

An objection was made upon the argument, and it appears in the defendants' answer, that another action is pending in this court for the benefit of all the creditors, and that such action was commenced prior to the present one. The mere existence of such an action, although a prior one, has no effect upon this motion. Whether prior or subsequent in its commencement, it affords no ground to stay proceedings in other actions, until after a judgment has been rendered in a case in which the other creditors can combine and make themselves parties. After such a judgment a motion could formerly be made to stay proceedings in other suits, so far as relates to the appointment of a receiver. This was settled by the chancellor, in *Innes* v. *Lansing,* before referrred to. (7 Paige, 583.)

This motion must be denied, with $10 costs, and the temporary injunction dissolved, without prejudice to the renewal of it, if the plaintiffs shall, by amendment, obviate the objections which now exist, as above stated.

Motion for an injunction and for the appointment of a receiver denied, with leave to renew, as above provided.

Lachaise *v.* Marks.

*Andrew Boardman* and *Charles O'Conor*, for the defendant, Marks.

BY THE COURT. WOODRUFF, J. After a careful reconsideration of the subject, and an examination of the authorities referred to by counsel on the argument, the opinions by which I was guided on the trial of this action are confirmed.

The certificate of the formation of the copartnership declares " that all the general partners interested therein are George P. Lord and Samuel N. Brown, both of Brooklyn, in the county of Kings and state of New York; that the special partner interested therein is Abiel B. Marks, of Jersey City, in the county of Hudson and state of New Jersey," &c., &c.

It is objected that this is not a sufficient statement of the residence of the parties to satisfy the requirement of the statute, which provides that the certificate " shall contain the names of all the general and special partners interested therein, distinguishing which are general and which are special partners, and their respective places of residence."

It is not claimed that the certificate was in this respect untrue, but that the certificate should have contained the word " residence," or " resident in," or some more distinct averment of the residence of the parties.

I think the objection unfounded. Assuming that the parties did actually reside in the places named, the certificate does contain their respective places of residence, and it indicates the residence of each by language that is clear and intelligible. The purpose of the certificate and the notices to be published is to give information to all whom it may concern of the particulars contained therein; and where the words " George P. Lord and Samuel N. Brown, both of Brooklyn," &c., are inserted therein, (it being true in fact that they reside in Brooklyn,) then their names and their residence are contained in the certificate; the very letter of the statute is complied with; and not only the letter, but its spirit and

intent are also satisfied. The language used imports that they are both residents of Brooklyn as truly as if the certificate had read "both residents of Brooklyn," instead ot "both of Brooklyn;" the latter phrase is a precise equivalent to the former; it conveys the same idea; it is universally so understood; it is the usual mode of indicating a man's residence, and it means present residence. Where a former residence is described, the term is "from Brooklyn," or "late of Brooklyn;" while "of Brooklyn" has no appropriate signification but that the person resides there.

It is argued that it is mere recital or *descriptio personæ*, and not a statement of the fact; and *Staples* v. *Fairchild*, 3 Coms. 41, is cited to show by analogy that it is insufficient.

But here description is the very object of the certificate and notice; and if, as description, the certificate contains the name and place of residence, it meets the very terms of the requirement. In the *Madison County Bank* v. *Gould*, 5 Hill, 309, where the time when the partnership was to commence was, by a mistake in the notice, erroneously stated, the difference between the notice and certificate was not deemed material as to creditors whose contracts were made after the latest date, notwithstanding the statute requires the publication of the terms of the partnership. The error did not affect subsequent creditors, and as to them was deemed immaterial. The court say there was a substantial compliance with the statute, and that is enough.

I am not able to perceive the application of the case of *Staples* v. *Fairchild* to the point in question. In that case, the proceeding was an attachment against a non-resident debtor. The statute authorizing such attachments requires that the application therefor shall state the grounds upon which the application is founded, and that the facts and circumstances to establish the grounds on which such application is made, shall also be verified by the affidavits of two witnesses. Now, in that case, the residence of the creditor in this state was in no form stated as one of the grounds of the applica-

tion. The grounds of such an application are various, and the applicant must specify those upon which he relies, and verify them by affidavit, and further, by the affidavit of his witnesses. There the application read, "the petition of G. S., of the city of Albany, respectfully showeth," &c.; and his affidavit, "Giles Sanford, of the city of Albany, being duly sworn, says, that he has a demand against S. B., &c., and that S. B. resides at Westport, in the state of Connecticut, or elsewhere out of this state." The grounds of the application do not purport to be that G. S. resides at Albany; and the court, therefore, say, that "if the recital contained in the application of his being of the city of Albany, could be held to amount to a positive or express statement of the residence of G. S., that fact is not verified by his affidavit." The affidavit only verifies that, which being sworn, he says; and so the court adds, "there is no oath to the fact of his residence." And, again, "whether residence of Sanford in this state, or that the contract was made in this state, was one of the grounds, is not stated in the application in terms, nor in any form verified by affidavit."

This case does not show that a certificate, stating that the general partners "are A. B. & C. D., both of Brooklyn," does not contain their names and residence.

The other cases cited, *Ex parte Aldrich*, 1 Denio, 662; *Cunningham* v. *Goelet*, 4 ib. 71, and *Ex parte Bank of Monroe*, 7 Hill, 177, were all disposed of (so far as they contain any thing resembling the point in question) upon the ground, that in an affidavit it is the statement following the words, "being sworn, says," to which the oath applies, and not the recital which precedes it; and, therefore, if an affidavit read A. B. of C. being sworn, says, &c., or C. D., agent of G. F., being sworn, says, &c., it is what the affidavit says, and not the recital which precedes the statement that is verified by his oath; and no perjury could be assigned if A. B. did not reside at C. in the one case, or if C. D. was not the agent of G. F. in the other.

The second ground upon which it is urged that the non-

suit should be set aside is, that there was an alteration in the names of the partners and in the capital or shares of the business, in contravention of the twelfth section of the act authorizing limited partnerships, which had the effect to make the defendant, Marks, liable as a general partner.

The section in question provides that every such alteration shall be deemed a dissolution of the partnership. That is all. The sole consequence of a mere alteration is to work a dissolution, and unless the partnership is carried on after such alteration, no change occurs in the liabilities of the special partner. What, then, was the alteration in the present case? It was an agreement of dissolution, and an adjustment of the terms thereof. Considered irrespective of the question whether Marks withdrew any part of his capital, which will be presently discussed, and for the purposes of this part of the case, conceding that this agreement of dissolution was an alteration within the meaning of this twelfth section, what was its effect? In the words of the statute, it is to "be deemed a dissolution of the partnership," and the statute does not annex to this a liability of the special partner.

But the statute adds: "Every such partnership which shall in any manner be carried on after any such alteration shall have been made, shall be deemed a general partnership, unless renewed as a special partnership, according to the provisions of a previous section."

It effectually disposes of any argument founded upon this last clause of the section, to say that there was no proof whatever on the trial that the business was in any manner carried on after the agreement, which it is claimed was an alteration, until the expiration of the time when that agreement would take effect as a dissolution under the 24th section of the statute. In compliance with the last named section, notices were published for four weeks, and, at the expiration of that time, the dissolution had legal effect as a dissolution by act of the parties. In this aspect of the case, if the agreement of dissolution be treated as an alteration under the 12th section, that of itself wrought a dissolution by ope-

ration of the statute. If after that time the partnership was not carried on until the dissolution took effect legally, according to the terms of the 24th section, after four weeks' notice, as a dissolution by act of the parties, it never became any other than a special partnership. The event upon which it was to "be deemed a general partnership" never happened. The alteration works a dissolution only. It is the carrying on of business thereafter that is to be deemed a general partnership.

Although the want of proof, that the partnership was carried on after the 14th of August, (when the agreement of dissolution was made,) seems to me conclusive upon the plaintiff's claim, so far as it rests upon the twelfth section, I think the true construction of that section warrants us in going still further. If the agreement of the 14th of August was an alteration within the provisions of the 12th section, then, as matter of law, by the very terms of the statute, the partnership was thereupon dissolved. But it is such partnership, when carried on after such alteration, that is to be deemed a general partnership; the statute does not in terms, nor, as I think, according to its legitimate construction, import that such partnership shall be deemed retroactively to have been a general partnership from the beginning. An alteration in the first instance dissolves the existing limited partnership; and the carrying on of such partnership in any manner thereafter is a carrying on of business by a general copartnership, with all the liabilities of a general partner resting upon each of the members.

But the case of *Beers* v. *Reynolds*, 12 Barb. S. C. R. 288, and *S. C.* on appeal, 1 Kernan, 97, is urged upon us as establishing the plaintiff's claim under this twelfth section. In relation to that case, it is to be observed, that the creditor there was one whose debt was contracted after the alteration in the partnership took place, and before the expiration of the four weeks of notice prescribed in the 24th section, until which the special partner could not claim exemption on the ground of dissolution by act of parties. The business was therefore carried on after the alteration was made.

Lachaise *v.* Marks.

There were in that case two grounds upon which he was charged as a general partner, and although they are mentioned together, and in some sort blended in the opinion of the court, they are distinct grounds of liability.

Reynolds (the special partner) had taken a mortgage upon the copartnership effects to secure the amount he was to receive for withdrawing, and had taken a judgment confessed in his favor by the general partner. Execution was issued, upon which the sheriff made fourteen dollars and returned the writ *nulla bona* as to the residue. This was an actual transfer to him of the copartnership property to the exclusion of the creditors; it was in every just sense a withdrawal of his capital, and the court charged that this made the special partner liable as a general partner as to all who were creditors at the time, and as to all who became creditors of the firm afterwards, without notice of dissolution. It was enough, for the purposes of the case then before the court, to say that these acts made him liable (the business being thereafter continued) to those who afterwards became creditors, of whom the plaintiff was one, until the proper notices of dissolution were given; and this is all that was decided in the Court of Appeals, when the case came before that tribunal. But the more comprehensive terms of the charge to the jury on the trial, nevertheless, seem to be approved in the opinion there and in the Supreme Court, and upon the two distinct grounds above alluded to. He had withdrawn his capital by the transfer made to him of the assets, and the lien created by the judgment and execution, to the exclusion of the creditors. This of itself made him liable as a general partner to all the creditors of the firm.

His acts in this respect amounted to an alteration under the twelfth section, and the business had been thereafter carried on, and so he was liable according to the terms of that section to creditors who became such after that alteration, notwithstanding the alteration was a dissolution by act of the parties, because, by the 24th section of the act, such alteration could not take effect to relieve him, as a dissolu-

tion by act of the parties, until the four weeks' notice was given.

Both these grounds of liability concurring, he was deemed by the judge who tried the cause liable to all the creditors alike, as a general partner.

Aside, however, from these views, I am inclined very strongly to think that the agreement between the defendants in the present action, dated the 14th of August, 1854, unaccompanied by any withdrawal of capital, and accompanied, as it was, by the notices of dissolution, signed by all the parties thereto, and declaring that the dissolution was to take effect according to law, was nothing more than a legal dissolution operating under the provisions of the 24th section, to dissolve the partnership at the expiration of the period of notice.

The papers are cotemporaneous. They are executed by all. They are to be construed together, and when taken together they import a dissolution, to take effect according to law, upon terms as between the parties themselves contained in detail in their agreement.

It is quite obvious that the legislature, in enacting the 24th section, and therein providing that no dissolution by act of parties shall take place, &c., until a notice of such dissolution shall have been filed and recorded, &c., did not intend to require an impossibility. They did not intend, that if the parties agreed upon a dissolution, and settled the terms thereof, they should be liable as general partners; and, as the only means of avoiding this result, should give notice before such agreement was made. No notice could be given " of such dissolution," unless nor until it had been agreed upon.

It was intended that the parties might agree upon a dissolution, settle its terms and provisions between themselves, but no capital should be withdrawn; the duties and obligations created by the special partnership arrangement should continue, and the dissolution should not, in fact nor in law, take place until the notices were filed and recorded, and duly published for the period prescribed. Reading the agreement of the 14th of

August in connection with the notices at the same time executed by all the parties, and filed, recorded and published, I am constrained to say that they are not inconsistent with the restrictions contained in the statute, nor a violation of the act in any respect.

It was urged that the agreement of the 14th of August, and the notes given in pursuance thereof, were, in effect, a withdrawal of so much ($15,000, or, including interest, $17,100) of the capital contributed by Marks, the special partner. I have considered the effect of the transaction of the 14th of August, in what I have above suggested, irrespective of this question. But it is quite clear, that if the taking of the notes in question was a withdrawal of any part of his capital, then the defendant is liable under the 15th section of the statute; and then, also, the decision in *Beers* v. *Reynolds* is distinctly applicable to him.

But such is not the effect of the giving and receipt of these notes. They have not *per se* the operation to withdraw one dollar until they are paid. They do not divest the title to any part of the assets of the firm. They do not constitute any specific lien upon those assets. They form no obstacle to the full payment of the debts of the firm. As between the defendants, and as against the creditors, they are not debts of the firm. Whether they were ever in such a form that they might be mistaken for the notes of the special partnership, did not distinctly appear on the trial; but the defendants' counsel on this argument conceded that they were given in the same name, "Lord & Brown," under which the general partners subsequently engaged in business. The utmost that can be said of these notes is, that they purport an agreement to pay the special partner for the interest he has in the assets, at a future day. It can hardly be called an agreement to refund his capital; but if it were, the penalty imposed on the special partner is not incurred by a purely executory agreement, never performed, and which has not, therefore, produced the effect which, on its face, it might seem to contemplate, and which the statute forbids. I apprehend, that in any case, an

agreement with the special partner to refund his capital, and even the giving of notes therefor, if the notes are not paid nor the agreement performed, would not subject the special partner to the consequences of a withdrawal of capital. It is the diversion of the assets to that object during the continuance of the copartnership, not a promise to pay a sum agreed upon at a day far distant, in contemplation of a dissolution agreed upon and duly notified and published, that would produce those consequences. If the good faith of the parties, and their full understanding that the assets of the firm were not to be diverted to this purpose may be taken into view, and they may, I think, to repel any suspicion that this was a device to accomplish indirectly what it was unlawful to do directly, they appear, in the studious care taken by all the parties, that these notes should none of them be payable until after the actual maturity of all the outstanding liabilities of the firm.

A doubt was suggested, and at first view seemed plausible, whether, if these notes were negotiable, they did not virtually effect withdrawal of the capital of Marks to the prejudice of creditors in this wise, viz., that he could, if he pleased, negotiate them to innocent *bona fide* third persons, who might thereupon claim as creditors of the limited partnership, the notes having been actually made before a legal dissolution had taken place. That he was thus furnished with the means of investing third persons with a title to share in the assets as creditors in common with, and, as the case might be, to the prejudice of the other creditors of the firm.

The short answer, however, to this suggestion is, that no such transfer has taken place, and nothing has been withdrawn, and no right has been acquired by Marks, or any one else, to claim any thing out of the partnership assets in diversion thereof from the payment of the proper debts of the firm. In this I have treated the notes as if they were negotiable in form, though I do not perceive, in the case, that it appears whether they were negotiable or not.

The plaintiff's counsel, on the trial and on the argument,

has under this head insisted that the defendant, Marks, is chargeable, because of the dividends received by him as interest on his capital and profits of the business. Unquestionably, if the receipt of such dividends was a device, resorted to in bad faith for the purpose of withdrawing his capital, it would have that effect. But the statute expressly authorizes this payment of dividends, if the original amount of such capital be not thereby reduced; and when (in the absence of any such bad faith or unlawful notice) it shall appear, that by an honest payment and receipt of such dividends the original capital has been reduced, he is bound to restore it.

It must suffice to say, that nothing whatever appeared on the trial warranting a suspicion of bad faith in making the dividends which he received. It was done by the general partners, upon their own convictions that the profits of the business not only amounted to the sum divided, but with a reservation out of the profits of a surplus fund deemed sufficient to cover any probable losses, and not only deemed sufficient, but which actually proved more than sufficient, down to the time of the last dividend. I still think there was nothing in the evidence running counter to this statement, which could be submitted to the jury.

And as to his duty to restore such dividends, in the first place, it did not in any wise appear that the capital was reduced by such payment. The evidence went to establish that there was a surplus of eighteen thousand dollars over and above all the capital, taking the assets at their fair value.

In the next place, it was not shown that the defendant had any notice that the capital was reduced, or that he was required to refund. And finally, his acts have been done in good faith, and he has not, with knowledge that by the receipt of dividends he has reduced his capital, refused or neglected to restore it. He is not liable on this account as a general partner, even although the creditors may be able, by a proper proceeding for that purpose, on establishing the

fact of over draft on his capital, to compel him to make good the fund for the payment of debts. Nor does the agreement of dissolution affect this question; it was no part of its real or apparent object to protect him in the retention of profits improperly realized; it would be doing violence to its meaning to give it any such construction; and it could not operate to defeat the claims of the creditors, or even to impede their right to a restoration of the fund, if the right was shown. Besides, the language of the statute is not that he shall restore what he receives if, by subsequent losses, the capital shall be impaired; it is only where it shall appear that "by the payment," &c., the original capital has been reduced. The case of *The Madison County Bank* v. *Gould*, 5 Hill, 309, is in entire harmony with these views.

I do not perceive that the 17th section, forbidding any interference by the special partner in the transaction of the business of the partnership, or § 20, forbidding an assignment made with intent of giving a preference to any creditor, or § 21, forbidding a sale of the private property of a partner with intent to give any creditor any preference, have any application to this case. Agreeing upon a dissolution and settling its terms, were not interfering with the conduct of the business; no creditor has been preferred, either among the private creditors of Marks or among those of the partnership.

It is undoubtedly true, that a special partner, seeking to enjoy the profits of a business conducted under this statute, and claiming the immunity which it affords, must observe strictly its requirements; and in the construction of the statute the protection of creditors against fraud, evil device, and every attempt to evade its stringent provisions, is of primary importance. But more than this would be unreasonable, harsh and subversive of the design of the act itself, which was not conceived in a spirit hostile to those who might seek to avail themselves of its benefits.

Upon a review of the whole case, I cannot discover that there was any question which, upon the plaintiff's evidence, ought to have been submitted to the jury.

Various exceptions were taken to the rulings made on the trial, in regard to evidence and to questions put to the witnesses, but as the points have not been raised on the argument, it is unnecessary for me to notice those exceptions.

I think, therefore, that the notice to set aside the nonsuit and for a new trial should be denied.

*Exceptions overruled, and motion to set aside nonsuit denied.*